Julie Goldberg, SBN 235565
Goldberg & Associates
14370 Ventura Blvd.
Sherman Oaks, CA 91423
Telephone: (818) 999-1599
Email: ecf@goldbergimmigration.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELQES ZAID ABOZAID,<br><br>    Plaintiff(s),<br><br>vs.<br><br>FOUR UNKNOWN NAMED AGENTS OF THE U.S. CUSTOMS AND BORDER PATROL, LINDA NELL, Special Agent of the U.S. Diplomatic Security Service, JAMES D. ANDERS, Special Agent of the U.S. Diplomatic Security Service,<br><br>    Defendant(s). | Case Number:<br><br>**COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS (BIVENS ACTION); DAMAGES; DECLARATORY RELIEF; JURY TRIAL DEMAND**<br><br>   **(1) Fourth Amendment**<br>   **(2) Fifth Amendment** |

## DEMAND FOR JURY TRIAL

Plaintiff, Belqes Zaid Abozaid, by and through the undersigned counsel alleges as follows:

## JURISDICTION

1.  This is a civil action for damages and declaratory relief brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201.

## VENUE

2.  Venue is proper in the Northern District of California pursuant to Title 28, United States Code, Section 1391 on the following grounds: (1) the plaintiff resides in this judicial district, or the defendants are officers or employees of the United States or agencies in the United States who are sued in their official capacity for their acts under the color of legal authority (28 U.S.C. § 1391 (e)(1)); (2) acts or omissions giving rise to this petition occurred in this judicial district (28 U.S.C. § 1391 (e)(2)); and (3) no real property is involved (28 U.S.C. § 1391 (e)(3)).

## PARTIES

3.  Plaintiff is a United States citizen. Plaintiff is a 22-year-old Yemeni-born Muslim woman, who lives and, at all material times, lived in San Francisco, California.

4.  Defendants Four Unknown Named Agents of the U.S. Customs and Border Patrol ("Defendants CBP Agents") are officers of the U.S. Customs and Border Patrol. At all material times, Defendants CBP Agents were in uniform and armed with firearms.

5.  The true names and capacities of Defendants CBP Agents are not known to Plaintiff. Plaintiff will amend this Complaint to reflect their true names and identifies at such time as they become known.

6.  Defendant Nell is a Special Agent of the U.S. Diplomatic Security Service.

7.  Defendant Anders is a Special Agent of the U.S. Diplomatic Security Service.

## FACTUAL ALLEGATIONS

8.  Plaintiff brings this action against the Defendants, who are sued in their individual capacities, to recover, among other things: remedies for violations of Plaintiff's civil rights, compensatory, punitive and exemplary damages, declaratory relief, attorney's fees, costs of suit, and expenses.

## BACKGROUND

9. On March 2, 2018, Plaintiff flew into San Francisco International Airport from Malaysia. She was accompanied by her brother and, at the time, two-year-old daughter. Plaintiff was wearing a niqab.

10. Plaintiff's daughter is and, at all material times, was a United States citizen.

11. When Plaintiff and her brother and daughter disembarked at the gate, Defendants CBP Agents were waiting for them. The officers told Plaintiff and family to come with them, without offering an explanation other than that Plaintiff was on a "flight list."

12. Plaintiff and her brother and daughter were frightened by the Defendants CBP Agents' uniforms and guns.

13. Plaintiff and her brother and daughter were taken to an inspection room near the baggage reclaim and customs area of the arrivals area (the "Inspection Room"). In the Inspection Room, Defendants CBP Agents emptied and searched their bags and contents, item by item. At the same time, Plaintiff was peppered her with questions about her husband, marriage, relatives, and a successful Form I-130 Petition for Alien Relative that she had filed on behalf of her husband in 2015 (the "I-130 Petition"). Defendants CBP Agents also asked Plaintiff if she had flown from or via Yemen, even though it was clear from her flight itinerary that had not.

14. Plaintiff and her brother and her daughter were held in the Inspection Room without food or water for approximately one hour.

15. Plaintiff and her brother and daughter were escorted by Defendants CBP Agents from the Inspection Room to a small, windowless room with nothing in it but a bench against one wall (the "Detention Room"). Here, Defendants CBP Agents repeatedly questioned Plaintiff about her father's identity and whether she knows someone purportedly named "Abdo Abdo

3

Albakri." Plaintiff does not know any such individual, and she replied to Defendants CBP Agents' questions accordingly.

16. Defendants CBP Agents also asked to take a DNA sample from Plaintiff. At first, Defendants CBP Agents said that they needed to confirm her identity, purporting that her Social Security Number had been stolen by someone, who was using a false passport in her name. But then Defendants CBP Agents said that the DNA sample and their detention of Plaintiff and her brother and daughter related to Plaintiff's half uncle, who had been stripped of his U.S. citizenship in Yemen in 2010. (Plaintiff's half uncle successfully sued the U.S. government and regained his citizenship in approximately 2012.) Defendants CBP Agents told Plaintiff that they wanted to ensure that she was not committing fraud.

17. Plaintiff asked what would happen if she did not agree to give a DNA sample. Defendants CBP Agents told Plaintiff that she would be stopped, detained, and questioned every time she traveled through an airport until she did.

18. Plaintiff was distraught and felt under duress. She felt that she had no choice in the matter. Plaintiff said that she would only give a DNA sample to a female officer after she had time to talk to her lawyer. Defendants CBP Agents told Plaintiff that they would come to her house to take a DNA sample from her sometime the following week. They released Plaintiff and her brother and daughter.

19. Plaintiff and her family members had been held in the Detention Room for approximately four hours without bathroom facilities, food or water.

20. Plaintiff and her brother and daughter were exhausted and distraught. After they left the airport, Plaintiff's daughter asked her repeatedly who the "people with the guns" were and why they had taken only Plaintiff and her brother and daughter away, and not any of the

4

other passengers. Plaintiff could not bear to tell her daughter the truth—i.e. that Defendants CBP Agents had targeted them because of their race, ethnicity, and religious faith.

21. Over the next week, Plaintiff was fearful and distressed. She did not who was going to come to her home or when, and whether they would be armed, as Defendants CBP Agents had been. Plaintiff was especially apprehensive of the effect the visit would have on her daughter, who had been traumatized by Defendants CBP Agents' unlawful racial profiling at the airport.

22. On March 5, 2018, during the afternoon, Defendants Nell and Anders came to Plaintiff's home. Plaintiff's daughter and parents were also home at the time.

23. Defendants Nell and Anders knocked on her door, identified themselves, and said that they had come to obtain a DNA sample from her.

24. Plaintiff had not been able to reach a lawyer and she explained that she did not want to give her DNA.

25. Defendants Nell and Anders demanded to take her DNA and said she had no choice or they would arrest her. As such, Plaintiff felt like she had no choice other than to let Defendants Nell and Anders into her home. When she did, she told them she would only allow them to take a DNA sample if they would give her a written statement afterwards, confirming that they had taken the sample and that they would arrest her if she did not comply.

26. Plaintiff told Defendants Nell and Anders about an unsettling incident where she had been asked by the U.S. government to provide a DNA sample for inconsistent and dubious reasons. In 2017, Plaintiff attended her husband's interview for the I-130 Petition at the U.S. Embassy in Kuala Lumpur, Malaysia. When consular officers there took Plaintiff's husband away for separate questioning, they also took a DNA sample from him. Then they asked Plaintiff

5

to provide a DNA sample, too. Plaintiff was told that the samples would prove that Plaintiff and her husband were married. Plaintiff was incredulous. She asked the consular officers how that could be and noted that they had not asked for a sample from her daughter. Plaintiff was told that the I-130 Petition would be processed faster if she provided a DNA sample. Plaintiff was anxious for her family to be reunited in the United States as soon as possible. For that reason alone, she agreed to provide a DNA Sample. But the I-130 Petition was subsequently returned to the USA and refused. After it was sent back it was held in administrative processing for over one year and adjudicated only after Plaintiff initiated a civil suit against U.S. Citizenship and Immigration Services to compel adjudication.

27. Defendants Nell and Anders agreed that they would provide written confirmation that they had taken a DNA sample from Plaintiff.

28. Plaintiff led Defendant Nell into her kitchen and removed her veil. Defendant Nell took a DNA sample from Plaintiff, swabbing each of Plaintiff's cheeks twice.

29. Defendant Anders gave Plaintiff a handwritten statement, confirming that "[he] took a DNA sample on 3/5/2018," and noting his badge number (i.e. 48325A).

30. Afterwards, without explanation, Defendants Nell and Anders told Plaintiff to show them her California identification card, Social Security card, birth certificate, and U.S. passport. Plaintiff retrieved the documents, and Defendants Nell and Anders took photos of them.

31. Before they left, approximately 30 minutes after they had arrived, Defendants Nell and Anders told Plaintiff that the results would be available in four to six weeks, and that she could call or email either of them to learn the results.

6

32. After six weeks, in May 2018, Plaintiff attempted to contact one of the agents to confirm that she had been cleared of any suspicion. But neither Defendant Nell nor Defendant Anders responded to her query.

**DAMAGES**

33. Defendants CBP Agents' detention of Plaintiff and her brother and daughter for approximately five hours, and Defendants Nell and Anders' taking of a sample of Plaintiff's DNA in her home and without her consent, caused and causes Plaintiff to suffer humiliation, extreme emotional distress, and anxiety.

**COUNT ONE: CLAIM FOR VIOLATION OF FOURTH AMENDMENT**
**Unreasonable Search and Seizure**
**(As Against Defendants Nell and Anders)**

34. Plaintiff re-alleges, and incorporates herein as if set forth in full, paragraphs 1 through 33 above.

35. Plaintiff had the right to be free from unreasonable search and seizure under the Fourth Amendment of the Constitution of the United States.

36. In their taking of a DNA sample from Plaintiff, Defendants Nell and Anders, acting under the color of authority, caused Plaintiff damages through the execution of an unreasonable search and seizure in violation of the Fourth Amendment. Defendants Nell and Anders' conduct was without proper justification or authority, without probable cause, consent or exigency. The search and seizure was premised on unlawful racial profiling. Defendants Nell and Anders are liable for damages for violating Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

37. As a direct and proximate result of Defendants Nell and Anders's actions, Plaintiff has suffered, and will continue to suffer, damages to the extent and in an amount subject

to proof at trial. Plaintiff has also incurred, and will continue to incur, attorney's fees, costs and expenses to an extent and in an amount subject to proof at trial.

38. On information and belief, Defendants Nell and Anders, and each one of them, acted with malice and with the intent to cause injury to Plaintiff. Coming into Plaintiff's home and invading her bodily integrity without consent, Defendants Nell and Anders, and each one of them, engaged in a willful conscious disregard for the probable consequences for injury of Plaintiff in a despicable, vile and contemptible manner. Plaintiff is entitled to an award of punitive damages for the purpose of punishing Defendants, and to deter them and others from such conduct in the future. *Smith v. Wade* (1983) 461 U.S. 30.

**COUNT TWO: CLAIM FOR VIOLATION OF FIFTH AMENDMENT**
**Substantive Due Process and Equal Protection**
**(As against all Defendants)**

39. Plaintiff re-alleges, and incorporates herein as if set forth in full, paragraphs 1 through 33 above.

40. In their detention of Plaintiff and her brother and daughter on March 2, 2018, and in their subsequent taking of a DNA sample from Plaintiff on March 5, 2018, Defendants, acting under color of authority, caused Plaintiff damages. Defendants' conduct was without proper justification or authority, without probable cause, consent or exigency. The detention of Plaintiff, her brother, and daughter and the taking of a DNA sample from Plaintiff were premised on unlawful racial profiling. Defendants are liable for damages for violating Plaintiff's due process and equal protection rights under the Fifth Amendment.

41. As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damages to the extent and in an amount subject to proof at trial. Plaintiff

8

has also incurred, and will continue to incur, attorney's fees, costs and expenses to an extent and in an amount subject to proof at trial.

42. On information and belief, Defendants, and each one of them, acted with malice and with the intent to cause injury to Plaintiff. Defendants, and each one of them, engaged in a willful conscious disregard for the probable consequences for injury of Plaintiff in a despicable, vile and contemptible manner. Plaintiff is entitled to an award of punitive damages for the purpose of punishing Defendants, and to deter them and others from such conduct in the future. *Smith v. Wade* (1983) 461 U.S. 30.

### COUNT THREE: DECLARATORY JUDGMENT ACT
### 28 U.S.C. § 2201
### (As against all Defendants)

43. Plaintiff re-alleges, and incorporates herein as if set forth in full, paragraphs 1 through 33 above.

44. Plaintiff alleges that Defendants Nell and Anders have violated her rights under the Fourth Amendment.

45. Plaintiff alleges that Defendants have violated her rights to due process and equal protection under the Fifth Amendment.

46. Plaintiff respectfully requests that this Court issue a declaration under 28 U.S.C. § 2201, affirming each of the preceding allegations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. General damages and special damages according to proof;

2. Punitive damages as allowed by law;

3. Declaration pursuant to 28 U.S.C. § 2201;

9

4. Attorney's fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

5. Costs of suit incurred herein; and

6. Such further relief as the Court deems just and proper.

Dated: March 2, 2020                                     Respectfully submitted,
                                                        /s/ Julie Goldberg
                                                        Julie Goldberg, Esq.
                                                        Goldberg & Associates
                                                        *Attorney for the Plaintiff*

10

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all matters so determinable.

Dated: March 2, 2020                                Respectfully submitted,
                                                    /s/ Julie Goldberg
                                                    Julie Goldberg, Esq.
                                                    Goldberg & Associates
                                                    *Attorney for the Plaintiff*